**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRANDON G. MORRIS | ) | CASE NO. 15-10860(7)(1) |
| DANA BELLAIR aka DANA | ) | |
|    BELLAIR MORRIS | ) | |
| | ) | |
| _____Debtors_____ | ) | |
| | ) | |
| JOE RYAN | ) | A.P. CASE NO. 16-1007 |
| DARLENE RYAN | ) | |
|             Plaintiffs | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| BRANDON G. MORRIS | ) | |
| DANA BELLAIR MORRIS | ) | |
| | ) | |
| _____Defendants____ | ) | |

**<u>MEMORANDUM-OPINION</u>**

This matter came before the Court for trial on the Complaint Objecting to Discharge and

Dischargeability of the Debt of Plaintiffs Joe and Darlene Ryan ("Ryans") or ("Plaintiffs") against

Defendants Brandon Morris and Dana Bellair Morris ("Debtors"), pursuant to 11 U.S.C. § 727(a)(3),

(a)(4) and (a)(6)(A) and 11 U.S.C. § 523(a)(2)(A) and (a)(6).  The Court considered the testimony

of the witnesses and documentary evidence presented by the parties at trial and concludes the

Debtors' discharge should be denied pursuant to 11 U.S.C. § 727(a)(3) and (a)(4)  and that the debt

owed to the Ryans by Debtor Brandon Morris is nondischargeable pursuant to 11 U.S.C.

§ 523(a)(2)(A) and (a)(6).    A Judgment incorporating the findings herein accompanies this Memorandum-Opinion.

## FACTS

Debtors Brandon Morris and Dana Bellair Morris have three children and reside at 220 Thoroughbred Lane, Russellville, Kentucky.  The Debtors began the quick purchase, moderate improvement and quick resale of homes ("flipping") while Brandon Morris was out of work.

The Ryans have known Brandon Morris since he was a young boy as he was a friend of one of the Ryans' sons.  Brandon would visit the Ryans' home when their son Josh visited from his home in Florida.

Brandon Morris, is a licensed realtor in the Commonwealth of Kentucky.  Morris worked as an independent contractor with Charlie Ray.  Together, they set up One Stop Realty, LLC, so that Brandon would not have to work as an independent contractor.  Two years later Brandon Morris obtained his broker's license so he could ultimately do short sale transactions and handle the entire transaction through One Stop Realty.  One Stop Realty was an active LLC, then it was dissolved and later reactivated by Brandon Morris.

In 2007, Brandon and the Ryans' sons, who were also involved in the real estate business in Florida, began purchasing properties on short sales.  Brandon testified that if a bank was involved in the negotiations for the short sales, the transaction could take as long as six months.  Brandon learned from one of the Ryans' sons that if the property was purchased and sold in the name of a trust, the transactions would move along much quicker.  The trust would also provide him with personal protection from liability should someone get hurt on the property and file a lawsuit.

Brandon Morris testified that he would find property owners who were either in foreclosure or about to be foreclosed upon and convince them to transfer title to the property into his wife's Trust for little or no money. He would then negotiate a short sale of the property with a lender. He testified that he told the property owners that this would benefit them because if he was successful on the short sale, the owners would not have a foreclosure on their record. Basically, he was using the money provided by the Ryans to pay off someone else's debt. Morris testified that he often would take the money from the short sale and roll it into the purchase of another property without telling the Ryans.

Brandon determined that he could further streamline the transaction by setting up a trust and naming his wife as the Trustee. He claims he did this for the ease of access to his wife for signing documents on behalf of the trust. Dana Bellair Morris testified that she had no recollection of legally changing her name to Dana Bellair, but the Debtors ultimately established the Dana Bellair Trust with Dana Bellair as the Trustee. Darlene Ryan testified later in the trial that she located Trust documents showing Dana Bellair as Trustee and also found a name change action filed on Dana Bellair Morris' behalf legally changing her name to Dana Bellair.

After Brandon Morris discussed the issue of the delay involved with banks and obtaining credit for the short sales, Joe Ryan agreed to set up a line of credit with his bank, BB&T, for Brandon Morris and his sons to have credit available quickly to purchase properties. Brandon Morris and the Ryans agreed they would use the line of credit to obtain funds to purchase the property and then he would repay the Ryans the borrowed funds upon the sale of the particular properties. The Ryans would not receive any profit upon the resale of the property and Brandon Morris would pay the interest owed on the line of credit.

As the property became available, Brandon would contact the Ryans and tell them the amount of money needed for a particular purchase. He would then describe the property and let them know whether there were any repairs that were needed in order to facilitate a quick sale. The agreement between Morris and the Ryans was that the Ryans would then write him a check for the purchase and Morris would repay the funds to the Ryans when the property was sold.

Brandon testified that there were times when he sold a piece of property and used the sale proceeds to purchase another property. He did not have the Ryans' permission to do this and the Ryans thought all repayments made by Morris were from the sale of the properties that they had advanced funds for the purchase. The Ryans were also unaware that at the time they advanced funds to Morris for the purchase of properties, some of the titles to the properties were being transferred into the Dana Bellair Trust. Morris never provided the Ryans with a closing statement or deed to any of the properties purchased with their funds from the line of credit.

Brandon Morris testified that in 2008 the real estate market began to slow down. Brandon told the Ryans that the properties were not selling because he was having trouble getting contractors to perform necessary renovations or that the repairs were taking longer than anticipated.

In May 2009, Frank Bell, the Ryans' loan officer at BB&T, informed the Ryans the loan needed to be redocumented. At that time, there was $283,000 out on the line of credit. The Ryans told Brandon Morris they needed a list of the properties that he had purchased but which had not been resold. Morris delivered a list with four properties. One of the properties was located in Hopkinsville, Kentucky and had a debt of $61,000 and an estimated value of $61,000. The second property was in Franklin, Kentucky with a $53,000 debt and estimated value of $80,000. Two of the properties were located in Russellville, Kentucky. One was on Jerry Dean Thomas Road with

a debt of $94,500 and an estimated value of $125,000.  The other Russellville property was located on Highway 79 with a debt of $75,000 and an estimated value of $120,000.  The debt total of the four properties was $283,000.

Through August of 2009, Morris continued to give the Ryans excuses regarding trouble with contractors and a down market as reasons for the properties not selling.  At that point, the Ryans told Morris they wanted to inspect each of the properties to determine what needed to be done in order to facilitate sales of the properties.

They met with Brandon Morris at the Ryans' house and decided to visit each of the properties.  They first met Morris at the Jerry Dean Thomas Road property.  A painter was working on the premises.  Morris failed to inform the Ryans on that visit that he had previously transferred the property into the name of the Dana Bellair Trust.

The Ryans then decided they wanted to see the other property in Russellville on Highway 79.  Darlene Ryan testified that Brandon tried to discourage them from actually going to the property.  When they eventually got to the property, Darlene Ryan commented that it appeared as though someone was actually living in the house.  She then knocked on the door and a gentleman told her that he was renting the house from a lady named Carolyn Ball.  At this point Brandon Morris went off to the side and broke down crying.  When confronted by the Ryans, Morris admitted he had sold the house and kept the money from the sale of the house which had been purchased with the Ryans' line of credit.

Darlene Ryan testified that she spent hundreds of hours at the County Clerk's Office trying to trace the chain of title on the properties in order to find out what had happened to them.  The Plaintiffs discovered deeds to approximately 31 separate pieces of property purchased in the name

-5-

of Brandon Morris from 2006 to 2014. Plaintiffs also found 56 deeds for property purchased in the name of Dana Bellair as Trustee for individual or separate Trusts. Darlene Ryan ultimately discovered that the Jerry Dean Thomas Road property was purchased by the Dana Bellair Trust and then gifted to the Morrises who then mortgaged the property. She tried to trace the deeds on all of the properties, but was unable to figure out the chain of title or whether Brandon Morris owned the properties.

The Ryans then met with Morris regarding the other properties. Morris stated that he had sold all of the other properties, except the Jerry Dean Thomas Road property. Morris admitted that he had actually mortgaged that property. At the meeting Morris stated he had sold the Hopkinsville property but did not tell them what he did with the sales proceeds.

After determining that Brandon did not have the funds to pay off the line of credit, the Ryans decided to sever their relationship with him. On October 29, 2009, they met with Dana Bellair and Brandon Morris and had Brandon Morris sign a Promissory Note in the amount of $283,500 with interest of 4.750%.

After signing the Promissory Note, Brandon Morris made two payments in January 2008, one for $15,000 and one for $16,500. After that the Ryans put him on a monthly payment schedule but he quickly fell behind on making these payments.

In August 2014, the Ryans filed a state court action against Morris to collect the debt alleging fraud.

On August 27, 2015, Debtors filed their Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code. Question 10 on the Statement of Financial Affairs asked the Debtors to list all properties transferred by them within ten years immediately preceding the

commencement of the case to a self-settled trust or similar device of which the debtor is a beneficiary. Debtors did not list any properties in their response to this question. When asked about this response, Dana Bellair Morris testified she had no idea what a self-settled trust was and did not ask her attorney to explain it to her.

Dana Bellair Morris testified that she knew she had signed a number of deeds of conveyance as the Trustee of the Dana Bellair Trust, but she did not keep copies of any documents. When told by the Ryans' counsel that there were 87 such deeds, she testified she was unaware that 87 properties had been sold in her name. She testified that she simply signed whatever her husband told her to sign. She was busy taking care of her three children and had no knowledge of any of the legal obligations she had incurred as the Trustee of the Dana Bellair Trust. In the course of researching the deeds on the properties, the Ryans discovered that Dana had filed an action to change her name from Dana Bellair Morris back to her maiden name, Dana Bellair. Her name was legally changed on June 17, 2008.

Dana Bellair also testified that she does not know what happened to any of the funds transferred on the 87 transactions. She did not keep any bank records. She had no copies of the Trust Agreement or copies of any of the closing statements on the transactions.

Question 10 on the Schedule of Financial Affairs also asked the Debtors to list all properties transferred in the ordinary course of business or financial affairs in the two years immediately preceding the date of the filing of the Petition. Debtors listed four transactions between February 2015 to June 2015. Debtors identified a transfer in February 2015 of a house located at 404 West 4th Street in Russellville on a short sale to Kevin and Debbie Robertson. The closing statement from that transaction showed that the Dana Bellair Trust purchased the property from the Cooks on

-7-

February 19, 2015. The Trust then sold the same property to the Robertsons on the same date for $40,000. Dana Bellair Morris recalled nothing about these transactions and had no idea where the funds to purchase the property from the Cooks originated.

In 2011 or 2012, Dana Morris returned to work after her youngest child started school. She continued to sign documents on behalf of the Trust but did not pay attention to the documents she signed. She trusted her husband and did whatever he told her to do. She assumed he was maintaining copies of all documents.

Brandon Morris testified that as a licensed real estate agent and broker he was required to maintain business records for five years. It was clear from the evidence at trial that Debtor did not maintain business records of all of his real estate transactions or if he did, he chose to conceal them. He testified at trial that he could not locate any of the documents related to the Dana Bellair Trust. He had, in the past, kept the documents in his car and then transferred some of them to his garage and threw others away. He testified that the documents in the garage were "trashed" years ago when some pigs knocked them over and destroyed them on the farm.

Debtor testified at his 2004 examination that he maintained records on all of his real estate transactions in the name of each specific trust but that the records were maintained on his personal computer. He stated that his computer and other electronic devices were seized by law enforcement in connection with criminal charges against him (unrelated to the real estate business) and that the Kentucky State Police destroyed the records in connection with their investigation. This was contradicted at trial by the testimony of Kevin Bibb, a detective employed by the Logan County Sheriff's Department. Detective Bibb testified that the computer was seized and taken to a forensic lab of the FBI in Louisville, Kentucky, the contents reviewed and the computer returned to Morris.

-8-

Detective Bibb testified that they did no testing of the contents and did nothing to destroy, alter or delete anything on the computer. The lab could not even access the hard drive on the Debtor's computer.

On page 7 of Debtors' Schedule of Financial Affairs, Debtors referenced only four real estate transactions in the two years preceding the filing date. At trial the Ryans produced a Deed of Conveyance dated during that two year period between Debtors and Mary Ann Morris, regarding property conveyed to the Commonwealth of Kentucky for $140,000. This transaction was not disclosed on Debtors' Petition. Additionally, Debtors failed to disclose a Deed dated November 17, 2009 between Brandon Morris and Dana Bellair in which they sold property to Christopher Gunn. The Deed showed the Debtor did not record the Deed in Logan County Clerk's Records until October 6, 2015, approximately one month after the Debtors filed their Chapter 7 Petition. Brandon Morris testified he did not recall why he did not record the Deed until after the Petition was filed.

Jerry Burns was appointed as the Chapter 7 Trustee of Debtors' case. Mr. Burns testified that at the time he conducted the Debtors' First Meeting of Creditors he always asks debtors if they reviewed their petition before signing and he did not recall either of the Debtors denying that they reviewed the Petition before signing it. The Trustee was not aware of Brandon Morris' affiliation with One Stop Realty LLC. Had he been aware of this, Mr. Burns maintains he would have investigated the entity further. The Trustee was aware that Debtors had disclosed the Robertsons' short sale transaction in response to Question 10 on the Schedule of Financial Affairs. However, Mr. Burns was not aware of other transactions between the Debtors and the Robertsons. There was one other transaction with the Robertsons but it was beyond the two year period preceding the filing.

The Trustee testified that based on documents provided by Debtors, he was unaware that the Debtors bought and sold over 80 properties or that Debtors were involved in approximately 115 sales of realty.  Had he known about transactions involving the Dana Bellair Trust, as well as the Debtors involvement with One Stop Realty, he would have investigated the matters further.  The Trustee indicated he found out about Debtors' involvement in these transactions after receipt of an email from the Ryans' counsel.  Based on what he subsequently learned about the Debtors numerous real estate transactions, he does not believe he conducted a thorough investigation.  For this reason, he asked the United States Trustee's Office to delay issuing a final report on the case until after the conclusion of this adversary proceeding.

The Debtors had bank accounts with several banks including First Southern National Bank in 2007 and 2008.  The bank records show that it was a joint account that was used by both Debtors to pay household and personal expenses.  The records show that Robert and Mary Coleman conveyed their realty at 718 Al Bedel Road in Auburn, Kentucky to Dana Bellair as Trustee for $10.00 in August 2007.  On January 8, 2008, Brandon Morris received a check for $61,000 from the Ryans which Brandon Morris deposited into the First Southern account on January 9, 2008.  Debtors then negotiated a short sale of the Al Bedel Road property in the name of the Dana Bellair Trust to Jamie and John Rosser for $77,550.

Despite discovering the Morrises' actions with respect to the money used to purchase properties, Joe Ryan engaged in two additional transactions with Morris.  Ryan did this because Morris was making timely payments on the Promissory Note at the time.  Ryan told Morris if he could find additional properties that they could buy, renovate and resell, he would apply any profit made toward the debt he owed Ryan.  They did two such deals, but after this the Ryans had no

-10-

further dealings with Morris.  The Ryans gave Morris credit for all payments he made on the debt.
As of September 2013, $238,000 was owed on the Note.  Morris, however, made no further payment
after September 2013.

## LEGAL ANALYSIS

Plaintiffs seek a Judgment against the Debtors to have the debt owed to them declared
nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6) and denying the Debtors a discharge
under 11 U.S.C. § 727(a)(3), (a)(4) and (a)(6)(A).  Based upon the evidence and testimony at trial,
the Court determines that the debt owed by Debtors to the Ryans is nondischargeable pursuant to
11 U.S.C. § 523(a)(2)(A) and (a)(6) and that the Debtors' discharge should be denied pursuant to
11 U.S.C. § 727(a)(3) and (a)(4).

A.    The Debt Owed by Brandon Morris to the Ryans is Nondischargeable Under 11
      U.S.C. § 523(a)(2)(A) and (a)(6).

(1)    Claim Under 11 U.S.C. § 523(a)(6).

The first Count of Plaintiffs' Complaint asserts that Brandon Morris committed conversion
by taking the funds provided by the Ryans for the purchase of real estate but instead used the funds
for their own personal use and failed to use the funds as the parties had agreed.  11 U.S.C.
§ 523(a)(6) provides that a debtor will not receive a discharge under § 727 from any debt "for willful
and malicious injury by the debtor to another entity or the property of another entity."  The word
"willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate
or intentional injury, not merely a deliberate or intentional act that leads to injury.  *Kawaauhau v.
Geiger*, 523 U.S. 57, 61-62 (1998).  Debts arising out of acts constituting conversion satisfy this

standard. *Steier v. Best* (*In re Best*), 109 Fed. Appx. 1 (6th Cir. 2004) (citing *Staskus v. Gene Weiss' Place for Fitness*, 1998 WL 242339 (6th Cir. 1998)).

In Kentucky, the wrongful exercise of dominion and control over the property of another constitutes conversion. *Post Road Partners, LLC v. Walters (In re Walters)*, 359 B.R. 156 (Bankr. E.D. Ky. 2006). The preponderance of the evidence submitted at trial established that Brandon Morris exercised dominion and control over the sale proceeds of several properties that had been purchased with the Ryans' money. Instead of returning the proceeds from the sale of that property to the Ryans, an arrangement upon which the Plaintiffs and Morris had agreed, Brandon Morris kept the proceeds and deposited them in a joint bank account with Dana Bellair. Both parties used the funds in the account for personal expenses and in several instances, to purchase other properties in their own name or in the name of the Dana Bellair Trust. These actions constitute conversion, which is considered a willful and malicious injury under 11 U.S.C. § 523(a)(6). These actions make the debt owed to the Ryans by Brandon Morris[1] nondischargeable under 11 U.S.C. § 523(a)(6).

Approximately two weeks before the trial date, Plaintiffs filed a Motion to Amend the Complaint to assert an additional claim for nondischargeability of the debt against Brandon Morris under 11 U.S.C. § 523(a)(2)(A). Both Dana Bellair Morris and Brandon Morris objected to the Motion. Dana Bellair objected on the basis of undue delay in the filing of the amendment and Brandon Morris asserted that he believed the amendment "may be prejudicial" to him should the Motion be granted. The Court heard arguments on the Motion to Amend the Complaint at the beginning of the trial. Plaintiffs' counsel argued that the new cause of action required no new

---

[1]Plaintiffs did not file a nondischargeability claim against Dana Bellair Morris.

discovery and the claim could be proven without any additional evidence and that the claim would be, in essence, one that would conform to the evidence presented at trial.

Rule 7015(b) of the Federal Rules of Bankruptcy Procedure incorporates Fed. R. Civ. P. 15. Rule 15(b) does not apply in this case as that portion of the Rule contemplates the amendment of pleadings to conform to the evidence take place during or after trial. *Gregg v. Ohio Dept. of Youth Services*, 661 F. Supp. 2d 842 (S.D. Ohio 2009). Here, the Motion to Amend the Complaint was filed two weeks prior to trial and was not scheduled to be heard by the court until the day of trial. The Amended Complaint was not tried with expressed or implied consent since both Defendants objected to the Motion. Thus, the Motion must be considered under Fed. R. Civ. 15(a).

In *Foman v. Davis*, 371 U.S. 178 (1962), the court stated that Rule 15(a) is to be interpreted liberally, and in the absence of undue delay, bad faith or dilatory motive on the part of the party proposing the amendment, leave should be granted. Delay, by itself, is not a reason to deny leave to amend. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971). Delay must be coupled with demonstrable prejudice by the party opposing the amendment. The Sixth Circuit has stated that in determining what constitutes undue prejudice, the court must consider whether the proposed claim would require the opponent to expend significant additional resources to conduct discovery and prepare for trial. *Helps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1999).

Brandon Morris objected to the amendment on the basis that it could prejudice him. However, it is clear that Brandon Morris did not suffer prejudice from the assertion of this new claim. It is based on the same facts and circumstances as those asserted in support of the § 523(a)(6) claim in the original Complaint. No new discovery was needed to either prove the claim or defend

the claim.  There being no demonstrated prejudice from the Amended Complaint, the Court grants the Plaintiffs' Motion to Amend the Complaint.

2.    Claim Under 11 U.S.C. § 523(a)(2)(A).

Under 11 U.S.C. § 523(a)(2)(A), a discharge under 11 U.S.C. § 727 does not discharge an individual from any debt for money obtained by "false pretenses, a false representation, or actual fraud. . . ."  *In Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277 (6th Cir. 1998), the Sixth Circuit stated the objecting creditor has the burden of proving by a preponderance of the evidence, the following elements: (1) the debtor obtained money through a material misrepresentation that at the time, the debtor knew was false or made with clear recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of the loss.  The Ryans met their burden of proof on each of these elements.

The Ryans had to first prove that Brandon Morris made an expressed misrepresentation, misleading omission or committed actual fraud and did so knowingly or with reckless disregard for the truth.  When Morris met with the Ryans, he materially misrepresented that he would use the line of credit to purchase property, make whatever repairs were needed, sell the property and repay the money loaned once the property sold.  At the very least, Brandon Morris with reckless disregard for the truth represented he would repay the purchase money upon the sale of the property.  In fact, however, Morris did not do this and on several occasions had the property titled in the name of the Dana Bellair Trust and then mortgaged the property and deposited the funds in his own bank account, or in other instances, used the sale proceeds to purchase other properties instead of returning the sums loaned for the purchase to the Ryans.  Morris did not tell the Ryans about any

-14-

of the transactions where he sold the property and used the funds for purposes other than to repay the Ryans for the purchase.

The Ryans also proved that Morris intended to deceive the Ryans. Morris' actions when he went with the Ryans to the four properties that had actually been sold without the Ryans' knowledge established this element. Morris tried to keep the Ryans from going to inspect the properties because he feared they would discover his deception. His actions were clearly intentional to further his deceitful plan.

Next, the Ryans had to prove that they justifiably relied on the false representation. Justifiable reliance is a matter of the qualities and characteristics of the particular plaintiff and the circumstances of the particular case. *Miller v. Miller (In re Miller)*, 2016 WL 7115865 (E.D. Ky. 2016).

In this case, the Ryans had known Morris since he was a young boy. He was friends with one of their sons and had never given the Ryans any reason to distrust him. Furthermore, Morris was a realtor and a broker and had explained the delays caused by the banks when obtaining financing for short sales. The Ryans were trying to help Morris and did not enter the arrangement with Morris to make a profit. Under these circumstances, the Ryans' reliance on Morris' representations was justified.

Finally, the Ryans' loss in this case was caused by their reliance on Morris' false representations. Had the Ryans known that Morris was not going to repay the funds they gave Morris upon the sale of the properties, they would not have established the line of credit and would not have lost $283,000, plus interest, attorney's fees and costs, as well as the countless hours spent

-15-

trying to research the Trust transactions and property deeds.  For these reasons, the debt owed by

Brandon Morris is also nondischargeable under 11 U.S.C. § 523(a)(2)(A).

      B.     <u>Debtors are not Entitled to a Discharge under 11 U.S.C. § 727</u>.

Plaintiffs seek to have both Debtors' discharge denied pursuant to 11 U.S.C. § 727(a)(3),

(a)(4) and (a)(6)(A).  The Court concludes the Debtors' discharge should be denied under 11 U.S.C.

§ 727(a)(3) and (a)(4) and therefore, will not consider the claim under (a)(6)(A).

Under 11 U.S.C. § 727(a)(3), the Court may deny discharge where the "debtor has concealed,

destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including

books, documents, records and papers from which the debtor's financial condition or business

transaction might be ascertained unless such act or failure to act was justified under all of the

circumstances of the case."   The party objecting to discharge has the burden to establish by a

preponderance of the evidence that debtor should be denied a discharge.  *Keeney v. Smith (In re*

*Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); Fed. R. Bankr. P. 4005.  The Ryans had to prove either

(1) that the Debtors failed to keep or preserve any recorded information, including books,

documents, records and papers; or (2) the Debtors, or someone acting for the Debtors, committed

an act of destruction, mutilation, falsification or concealment of any recorded information including

books, documents and records.  The Bankruptcy Code requires debtors to provide creditors "with

enough information to ascertain the debtor's financial condition and track his financial dealings with

substantial completeness and accuracy for a  reasonable period past to present."  *Ross v. Ross (In*

*re Ross)*, 367 B.R. 577 (W.D. Ky. 2007).  Once this is shown, the burden shifts to debtors to justify

the lack of records.  *Id.*

In this case, the Debtors revealed in their Petition only four property transactions in the two years prior to the date of the Petition. Debtors held title to at least 87 pieces of real estate over several years prior to the filing of the Petition. This evidence was not determined from records produced by the Debtors in discovery. These transactions were discovered by the Plaintiffs on their own investigation. Brandon Morris testified that as a realtor and broker he was required by the Commonwealth of Kentucky to maintain records of all transactions for five years.

Morris, however, testified that he kept his records in his "office," which was actually his car. He put the documents in manila folders and periodically purged them. Others were moved in boxes to his garage which he says were knocked over by pigs on his farm and that he "trashed" them over the years.

The Ryans took Debtors' Rule 2004 examination and requested all of the Trust documents from the Dana Bellair Trust. Neither of the Debtors could find any of the Trust documents for any of the Trust transactions. It strains credulity to think that someone in the real estate business, such as the Debtors, would have no records of over 87 real estate transactions.

Whether Debtors destroyed the records purposely or accidentally threw them away, the fact remains that there was nothing available to ascertain the Debtors' business dealings, other than what the Plaintiffs' own investigations produced. This produced enough evidence of the transactions to support the 11 U.S.C. § 523 claims. The burden shifted to Debtors to justify their lack of records, a burden they failed to meet. Debtor Dana Bellair maintains she relied on her husband to maintain the records related to the Trust transactions. The Court does not view Ms. Bellair as an innocent party in these transactions. She was the Trustee of the Trust and had her name legally changed from her married name so she could sign the Trust documents under the name Dana Bellair. It is not lost

-17-

on the Court that anyone trying to trace Brandon Morris' transactions would likely not discover those transactions done under his wife's maiden name, as was used in the Trust documents. Additionally, a review of the various bank accounts used by Brandon Morris shows they were joint bank accounts with his wife. Brandon Morris testified that he and his wife had access to these accounts and used the funds in them for personal expenses. Since Dana Bellair Morris used the ill-gotten gains, the Court cannot conclude she was an innocent party and had no duty to maintain any of the business records on the transactions where she acted as the Trustee. The evidence of record supports a finding of a denial of discharge for both Debtors under 11 U.S.C. § 727(a)(3).

Finally, the evidence also supports a finding of denial of discharge for Brandon Morris under 11 U.S.C. § 727(a)(4)(A), for "knowingly and fraudulently, in or in connection with the case made a false oath or account." In his Rule 2004 examination, he testified he did not possess any documents related to the Trust transactions because they were destroyed by the Kentucky State Police when his computer and other electronic devices were seized and examined by the police forensic lab in connection with a criminal action against Brandon Morris. This claim was refuted at trial by a detective with the Logan County Sheriff Department. Considering the lack of credibility of the Debtors, this finding is easily reached by the Court. Accordingly, the Plaintiffs have established that the denial of discharge under 11 U.S.C. § 727(a)(4)(A) for Brandon Morris is warranted.

## **CONCLUSION**

For all of the above reasons, Judgment in favor of the Plaintiffs and against Debtor Brandon Morris declaring the debt of $238,457.82, plus interest at the rate of 4.750% is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6) and that Debtor Brandon Morris and Dana Bellair

Morris are denied a discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A). A Judgment

incorporating the findings herein accompanies this Memorandum-Opinion.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: December 19, 2017

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRANDON G. MORRIS | ) | CASE NO. 15-10860(7)(1) |
| DANA BELLAIR aka DANA | ) | |
|     BELLAIR MORRIS | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |
| JOE RYAN | ) | A.P. CASE NO. 16-1007 |
| DARLENE RYAN | ) | |
| Plaintiffs | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| BRANDON G. MORRIS | ) | |
| DANA BELLAIR MORRIS | ) | |
| | ) | |
| Defendants | ) | |

## JUDGMENT

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is entered in favor of the Plaintiffs Joe and Darlene Ryan declaring the debt owed to them by Brandon Morris in the amount of $238,457.82, plus interest at the rate of 4.750% pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6).

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Debtors Brandon Morris and Dana Bellair Morris are denied a discharge under 11 U.S.C. § 727(a)(3) and (a)(4)(A).

This is a final and appealable Judgment.  There is no just reason for delay.


_____
Joan A. Lloyd
United States Bankruptcy Judge
Dated:  December 19, 2017

-2-